David L. Malbin, J.
This is a motion pro se for a writ of error coram nobis requesting a hearing as to the voluntariness of an alleged confession. The application is based on the authority of Jackson v. Denno (378 U. S. 368) and the procedure prescribed and adopted by the opinion of Chief Judge Desmond in People v. Huntley (15 N Y 2d 72).
Briefly the record indicates that the petitioner-defendant was jointly indicted with a codefendant on January 25, 1963 for the crimes of burglary in the third degree and grand larceny in the second degree; that he was thereafter convicted by the jury on April 22, 1963 for the crimes of unlawful entry and grand larceny in the second degree.
On August 7,1963, after he was adjudged to be a second felony offender, the defendant was sentenced to ,Sing Sing Prison for a term of 2% to 10 years.
Reviewing briefly the trial minutes, the testimony disclosed that the assistant manager of Sheffield Farms described the premises and stated that he closed the place before he left; that he observed everything was in order, and later on he had ascertained that two comptometers were missing. The proof established that the premises had been burglarized and the above-mentioned adding machines were taken. A police officer testified that he received a police communication while on radio patrol about 11:00 p.m., and he immediately repaired to the vicinity of the situs of the burglary. Bn route the patrolman saw a person place an adding machine under a parked truck; he then followed the defendant Green into the foyer of a house which premises were about one and a-half blocks from the scene of the crime. The officer questioned the defendant; it was very *814 brief and the following is the transcript as it appears in the record of the trial. Questioning of Patrolman Lefkowitz:
Q What was this defendant doing at the time you entered the foyer? A He was jiggling the knob trying to get in.
Q What do you mean by jiggling the knob? A He had his hand on the knob and was trying to get inside.
Q In addition to seeing this person, the defendant, in the foyer, was there any item or article or object there in the foyer? A There was.
Q What was that? A There was a Remington adding machine.
Q I show you People’s Exhibit 1 and ask you if that machine is indicated or shown on this particular photograph? A It is. .
Q What machine was that? A It is the lighter colored machine.
Q Where did you see that machine at the time? A It was on the floor inside the foyer between two doors.
Q How far away was that machine from where this particular defendant was standing? A About two feet.
Q Did you then speak to this defendant regarding the machine? A Yes, I did.
Q What question did you ask him and what answers did he give you ? A I asked him where he got the machine. He said he got it from Sheffield Farms. I asked him how did he get in there. He said he asked permission to use the bathroom. He said he went up, went into the bathroom, and as he came out, he saw two machines, and him and his partner picked them up and took them.
It is conceded and a perusal of the record indicates that no objection was interposed as to the admissibility of the alleged inculpatory statements or confession; nor was there any question raised as to the voluntariness of the interrogation and the defendant’s answers. However, the record does disclose that at page 159 of the court’s charge, the jury was instructed as follows: “ The prosecution has also claimed that the defendant made a voluntary admission when questioned by the police officer as to where he got the adding machine. The police officer stated that the defendant, as I just explained to you, said he got it from Sheffield Farms. ‘ I asked permission to go to the bathroom, and then I went in and took the machine. ’ That statement is in the nature of a confession, and it requires that I instruct you as to its effect. Section 395 of the Code of Criminal Procedure reads as follows: ‘ A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor; but it is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed.’ This applies equally to a confession that is oral as well as written. It is not necessary to have any defendant sign a confession in order that it be determined valid. If believed, a confession, written or oral, is as good as if signed by the defendant. * * * No confession, oral or written is *815 of any value, however, unless it is a voluntary one. If you find that the confession was voluntary and true, you may consider it and give it the weight that you deem it should have ”.
Obviously the trial court charged the jury on voluntariness. Under these circumstances as it was concisely and definitely stated in People v. Huntley (supra, p. 77): “ No Jackson-Denno hearing will be necessary in cases where a confession was admitted without any objection by the defendant or any assertion by him or his witnesses as to voluntariness. Even in these cases, however, if the trial court has charged the jury on voluntariness the issue was in the case and a new hearing is indicated.” (Emphasis supplied.)
The court lias read the trial record and finds no proof contained therein that even remotely suggests that the defense has created an issue as to the voluntariness of the confession. However, as indicated above, the court in charging the jury made general reference to the law concerning the admissibility of confessions and read section 395 of the Code of Criminal Procedure in its entirety.
No strained interpretation is required to apply in this case the mandate of the Huntley ruling (supra). The court agrees with the District Attorney who has consented that the defendant-petitioner is entitled to a Jackson-Denno hearing.
In People v. Rizzi (N. Y. L. J., April 29, 1965, p. 15, col. 7) the defendant Rizzi was convicted of murder in the first degree and sentenced to life. The judgment was unanimously affirmed and leave to appeal to the Court of Appeals was denied. However, the case was remitted to the trial court under the authority of Jaclcson-Denno and People v. Huntley. The District Attorney opposed the application for a hearing and the court concluded that there was no issue of voluntariness involved and denied the motion. In the Ri.ssi case, as in the case at bar, the trial court charged the jury in general language, reading section 395 of the Code of Criminal Procedure; in denying the motion for a confession-voluntariness hearing, the court stated in People v. Rizzi (supra): “ Under these particular circumstances the judge’s charge cannot be held to have by itself injected the issue of voluntariness into a case which on no possible view and in no form whatever was in the ease.” This court cannot follow the learned opinion of his distinguished colleague. The possibility that an affirmative determination would open the doors to an overwhelming number of Jackson-Denno hearings lends no justification to a denial of the substantial rights of a defendant.
Unquestionably in the past, that is prior to the Jackson-Denno, Huntley decisions, where there were similar circumstances as *816 here present, the Trial Judge advised the jury that the confession was admissible only if voluntarily made by the defendant and that the statement was true. The court ordered a hearing. (See People v. Green, N. Y. L. J., April 19, 1965, p. 16, col. 5 [Malbin, J.].)
The prosecution offered the trial record in accordance with the ruling in People v. Huntley (supra, p. 77) which indicated that “ there is no constitutional impediment to using the prior record provided that the defendant and the People are permitted to put in additional proof if either side so desires.” The petitioner-defendant submitted additional evidence whereby he sought to establish (1) that he was assaulted by the officer and that the confession imputed to him was involuntary and not freely made; (2) that he was not warned of his right to aid of counsel and was not advised of his privilege against self incrimination.
Admittedly, the defendant-petitioner was not advised of right to aid of counsel — when he was under arrest — nor was he warned of his privilege to refuse to make any statement and the ensuing danger that it could be used against him. The record fails to disclose any evidence that the defendant requested the aid of counsel or asked if he had a right to refuse to answer any questions. It may be noted that no proof was offered at the trial that the defendant was assaulted before he made the alleged confession, nor that he was not warned before he made the inculpatory statements. Notwithstanding these facts the defendant is within his rights to offer additional proof if he so desires as authorized by the Huntley procedure.
The following is a brief reference to some of the hearing transcript of testimony offered by Patrolman Lefkowitz:
Q * * * did you arrest the petitioner on January 2, 1963? A Tes, sir.
Q That was in the borough of Brooklyn, county of Kings, city and state of New York? A Yes, sir.
the court: What date was that?
mb. baumann: January 2, 1963.
Q Whereabouts did you place the defendant under arrest, particularly? A In the hallway, I believe it was 16 St. Andrews Place.
Q What is the nature of those premises ? A That is a dwelling.
Q Prior to making the arrest, will you tell the Court what observations you made of the actions of the defendant? A We were on the lookout for two men carrying two machines. I traveled west on Herkimer Street, and as I proceeded down St. Andrews Place, which is a small block running from Atlantic to Herkimer, I saw one guy put something under a truck.
Q Did you later identify this person ? A Yes, sir.
Q Who was that? A I believe his name is Figorow.
Q Did you see this defendant at that time? A No, sir.
Q What was the next thing you did, Patrolman?
*817 the court: What time was this about, Officer?
the witness : About 5 or 10 minutes to 12, midnight.
Q What was the next thing you did? A We apprehended Figorow and I asked him where his partner was, and he said in the hallway.
Q Did you then proceed to the hallway? A Yes, sir.
Q Did you place the defendant under arrest at that time? A Yes, I did.
Q After you placed him under arrest, did you ask him certain questions ? A Yes, I did.
Q Prior to asking him any questions in connection with the machines, did you tell him that he had a right to remain silent? A No, sir.
Q * * * Did you ask him whether or not he wanted an attorney?
the witness : No, sir.
Q Did you tell him that he had a right to counsel? A No, sir.
Q What questions did you put to him Officer, and what answers did he make? A I asked him where he got the machines, and he said from Sheffield Farms. I asked him how he got in there and he said he went into the yard and asked permission to use the bathroom. He said he went upstairs into the bathroom, and as he came out he saw the two machines, and he took them.
Q Did you place your hands on him at any time, Officer? A Yes, I did.
Q Is this prior to the conversation? A I took him outside the hall, yes.
Q Did you ever strike him with your gun? A No, sir.
Q Did you ever strike him with your fists? A No, sir.
Q You say you placed your hands on him? A Yes, I brought him outside.
Q Had you questioned him at that time? A Yes, I took him outside and questioned him.
Q After you took him outside, you questioned him? A Yes, sir.
Q How long did the questioning last at that time? A About five minutes, the whole thing.
Q And he readily admitted'going into the place ? A Yes, sir.
The following is a brief reference to some of the hearing transcript of testimony offered by the defendant-petitioner, Leon Green:
Q * * *' were you arrested on January 2, 1963? A I was.
Q Where were you arrested? A St. Andrews Place.
Q Do you know the cross streets that border St. Andrews Place ? A Yes.
Q Tell us what the cross streets are. A Atlantic Avenue and Herkimer Street.
Q Were you arrested by this patrolman, Patrolman Lefkowitz? A Yes, sir.
Q Tell the court in your own words the circumstances leading up to your arrest, the first time you saw Patrolman Lefkowitz, and what happened thereafter. A I was going up the street. I was going up St. Andrews, and Patrolman Lefkowitz grabbed me.
Q Were you accompanied by anybody at that time? A No.
Q What happened after the patrolman grabbed you? A He asked me where was I going.
Q What did you say? A I said I was going to my friend; that he lived on St. Andrews Place.
Q What if anything happened after that? A He asked me did we steal anything. I told him I didn’t steal anything. He took us to the precinct. That is where we were booked for some adding machines.
Q Did you ever admit on the street at St. Andrews Place that you had taken a machine? A I did.
the count: You did admit it?
the witness : I did.
*818 Q Will you tell the Court the circumstances surrounding your admission to the police officer that you had taken the machine. A That is when the police officer hit me.
Q Patrolman Lefkowitz? A Yes.
Q How did he hit you? A With his fists.
Q How many times did he hit you? A About three times.
Q And after the third time, you admitted breaking into the milk factory? A I admitted the stealing. I said I did it.
Q Did you tell him how you got into the place and stole the machines? A No.
Q When you were taken to the police station, were you questioned again by this officer? A No, the detective.
Q Did you admit taking the machines in the police station? A No, I didn’t say anything no more.
Q It is your testimony that the reason you admitted stealing the machines is that you had been beaten by the police officer, is that right? A Yes.
Q You said that when the officer questioned you, you said you stole the machines ? A That is what he asked us about, the machines.
Q And you told him you stole the machines? A To keep him from hitting me, I admitted to it.
Q You mean you were just repeating to the officer what he said? A Yes.
Q You were just walking along the street and the officer came up to you and questioned you, is that right? A That’s right.
Q And then he struck you with his fists? A Yes, sir.
Q And then you told him you stole the machines ? A Yes, sir.
Q Weren’t you in the hallway on St. Andrews Place? A Never. (S. M., pps. 23, 24, 25, 26, 27).
The interrogation was very brief. The statement was made without hesitation and under the attendant circumstances here present clearly indicate that it was a free and normal statement made by the defendant.
The court is of the opinion that the defendant made the alleged confession of his own free will and voluntarily; that the defendant’s testimony that he was assaulted by the police officer was unbelievable, and was a recent fabrication no doubt concocted to meet the recent decisions that entitle a defendant to a Jackson-Denno hearing when an issue of voluntariness is raised.
The court finds that the defendant was not warned of his right to aid of counsel, nor his right against self incrimination. The court further finds that no request for aid of counsel was made by the defendant.
The court concludes that the prosecution met its burden to establish that the confession was beyond a reasonable doubt voluntarily and freely made by the defendant.
There remains one question of law to he determined. Did the failure to warn the defendant-petitioner of his right to aid of counsel and to remain silent — even though the defendant at no time requested the aid of counsel — invalidate and make the alleged confession inadmissible?
*819 There is no obligatory requirement of New York State law to warn an accused of his right to counsel and privilege to refrain from making a statement after his arrest. (People v. Randazzio, 194 N. Y. 147.) Unquestionably, under certain circumstances many occasions arise when a defendant must be advised of his right to the aid of counsel (U. S. Const., 6th Arndt.); and a flat refusal to answer a request of an accused would deprive him of his constitutional right against being compelled to give evidence against himself. (See People v. Noble, 9 N Y 2d 571.) The Court of Appeals has made concise and definite rulings regarding confessions in a line of cases that followed the Noble case; they directed the exclusion of confessions taken from the defendant. (See People v. Everett, 10 N Y 2d 500; People v. Lane, 10 N Y 2d 347; People v. Donovan, 13 NY 2d 148, 153; People v. Fallia, 14 N Y 2d 178.) The United States Supreme Court made its decision a constitutional requirement to be followed in the State court. (Escobedo v. Illinois, 378 U. S. 478.)
Involuntary confessions are excluded under section 395 of the Code of Criminal Procedure as well as by the Fourteenth Amendment to the Federal Constitution, which provides, in part, that no State shall “ deprive any person of life, liberty or property, without due process of law ”. (Richardson, Evidence [9th ed.], Prince, § 334; Leyra v. Denno, 347 U. S. 556; Malinski v. New York, 324 U. S. 401; Ashcraft v. Tennessee, 322 U. S. 143.) As the Supreme Court has said a “ denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice * * Such unfairness exists when a coerced confession is used as a means of obtaining a verdict of guilt.” (Lisenba v. California, 314 U. S. 219, 236-237; People v. Green, 23 A D 2d 500.)
The Court of Appeals in March, 1965 in People v. Gunner (15 N Y 2d 226) clearly and definitely decided the law controlling the precise question of right of warning to an accused person at the time of his arrest. It was contended in the Gunner case that it was incumbent upon the police to advise him of his right to refrain from answering any question and also his right to an attorney at that time. Quoting from the opinion of Judge Fold (p. 233): 11 The court finds this argument without merit; the majority is of the opinion that the rule heretofore announced in our decisions (see, e.g., People v. Failla, 14 N Y 2d 178, supra; People v. Donovan, 13 N Y 2d 148, supra; People v. Meyer, 11 N Y 2d 162; People v. Noble, 9 N Y 2d 571; People v. Waterman, 9 N Y 2d 561; People v. Di Biasi, 7 N Y 2d 544) should not be extended to render inadmissible inculpatory statements obtained *820 by law enforcement officers from a person who, taken into custody for questioning prior to Ms arraignment or indictment, is not made aware of his privilege to remain silent and of his right to a lawyer even where it appears that such person has become the target of the investigation and stands in the shoes of an accused. Thus, the court answers in the negative the question posed but not passed upon in People v. Stanley (15 N Y 2d 30, 32) (Emphasis supplied.)
The court has read numerous decisions on the questions involving the constitutional rights of the accused to the aid of counsel and his privilege against self incrimination (U. S. Const., 5th and 6th Arndts.) and has so indicated the diverse opinions pronounced in the various jurisdictions. (See cases cited in People v. Jackson, 46 Misc 2d 742.)
The court prefers to follow the opinion of the New York Court of Appeals, rather than adopt the ruling of the Third Circuit Court of Appeals, unless upon a review and a contrary determination has been made by the United States Supreme Court. Surely there is need for clarification of the problem herein presented. Unquestionably, a final determination of this issue is of great concern to the Judges who are called upon to make initial rulings during the course of a trial. The ultimate answer may soon be found when this question will no doubt be presented to the highest court of our land for determination as to whether failure to warn an accused of his right under the Sixth Amendment to the United States Constitution is not a denial of “ assistance of counsel
The court has complied with the mandate pronounced in the Jackson v. Denno case (supra), and also followed the procedure adopted in the Huntley case (supra). The defendant-petitioner was afforded a full, independent and evidentiary hearing on the issue of voluntariness of the confession and the court has indicated its findings of fact and conclusions of law as above indicated.
The court has carefully reviewed the entire trial record and perused the additional proof offered during the hearing herein; and has come to its determination that there is not a scintilla of proof that would justify a conclusion contrary to the decision that there is no basis in law or fact to hold that the confession is inadmissible.
Accordingly, that part of the motion requesting that the alleged confession be declared inadmissible, be and the same is in all respects denied. The District Attorney is directed to submit an order in accordance with the decision herein and to serve a copy of said order and decision upon the attorney for the defendant.